# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSIE SYLVIA HERNANDEZ, | 1:10-cv-00198 SKO |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | (Doc. 1) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## **BACKGROUND**

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") pursuant to Title II and for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act (the "Act"). 42 U.S.C. § 405(g). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 6, 9.) On April 7, 2010 the action was reassigned to the Honorable Sheila K. Oberto for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

**FACTUAL BACKGROUND**

Plaintiff was born in 1960, has a high school education, and has worded as a campus supervisor/aide and a security guard. (Administrative Record ("AR") 12, 41.) On October 2, 2006, Plaintiff filed an application for DIB and SSI, alleging disability beginning June 9, 2006, due to a left ankle injury. (AR 9, 98-102, 103-05.)

**A.    Medical Evidence**

In July 2003, Plaintiff presented for examination where she complained of pain in her left foot and ankle; Feldene was prescribed. (AR 200). Treatment records indicate that Plaintiff returned for examination, stating that the Feldene had not helped; an injection was administered and Plaintiff was instructed to return for follow-up in a month. (AR 200.)

On May 15, 2006, Plaintiff was examined by Dr. Frederick J. Kruger, a podiatrist, for evaluation of joint pain and tenderness. (AR 197.) Dr. Kruger's records indicate that Plaintiff was in no acute distress, no edema in her extremities was noted, muscle strength and tone were normal, her gait was stable, and her station was normal. (AR 197.) He also found that Plaintiff had mild and moderate tenderness of her left tarsi. (AR 197.) Dr. Kruger diagnosed Plaintiff with sinus tarsi syndrome left and "pcs planus bilateral"; he administered a corticosteroid injection and prescribed over-the-counter orthotics. (AR 197.)

On August 15, 2006, Dr. Kruger again examined Plaintiff and made findings similar to those in May 2006, but he prescribed Prednizone for inflammation. (AR 196.) On August 31, 2006, Plaintiff underwent a magnetic resonance imaging scan ("MRI") of her left ankle which revealed "some evidence of soft tissue edema" and several other abnormalities. (AR 194.) The MRI results were interpreted to be "highly suggestive of underlying fibrocartilaginous coalition of the calcanconavicular joint." (AR 194.) The MRI report indicated that the objective findings were "compatible with sinus tarsi syndrome." (AR 194.)

On September 6, 2006, Dr. Kruger recommended custom orthotics for Plaintiff and stated that she "is not to work for two months due to fibrocartilaginous coalition of calcaneonavicular joint." (AR 193.) He instructed her to return in two months for follow-up. (AR 193.) On follow-up in November 2006, Dr. Kruger determined that "[c]linically, the condition is worsening and

reocurred" [sic].  He assessed "sinus tarsi syndrom, pcs planus bilateral," congenital abnormalities of the foot, and "calcaneal-navicular coalition Plantar facitis left."  (AR 187.)  He instructed that Plaintiff return to the office in one month.

On November 14, 2006, Dr. C.A. Fracchia, a state agency physician, reviewed Plaintiff's medical records.  Dr. Fracchia opined that Plaintiff should be limited to light work because of pain, but he also indicated that she would have no postural or other limitations.  (AR 183.)

On December 5, 2007, Dr. Kruger again examined Plaintiff noting that Plaintiff was taking no medications but continued to prescribe Prednizone for inflammation and administered a cortisone injection.  (AR 205-06.)

In September 2008, Plaintiff underwent a computed tomography ("CT") scan of the left foot and ankle, and the findings were summarized as follows:

> There is no evidence of osseous tarsal coalition.  However, there may be some underlying fibrous coalition.  There are significant degenerative changes with subchondral cyst formation at the calcaneonavicular joint.  In addition, there is some joint space narrowing at the joint between the lateral aspect of the navicular bone and lateral coneiform.

(AR 212.)  Dr. Kruger opined that Plaintiff was permanently disabled because of the calcaneal-navicular coaltion and ordered an MRI of Plaintiff's ankle.  (AR 219.)

An October 8, 2008, an MRI of Plaintiff's left ankle indicated the following findings, in relevant part:

> At the level of the sinus tarsi there is subchondral cyst formation within the talus and calcaneus. Edema extends into the sustentaculum tail of the talus. This edema in the sustentaculum tali has increased when compared to the prior exam. There is also edema in the navicular bone where it articulates with the calcaneus. This edema is new in the interval. There is also a prominent navicular bone with elongation along the inferior aspect of the calcaneus.  Given these findings of a talar beak and prominent plantar aspect of the navicular bone with edema, there is likely a fibrous coalition at the calcaneal navicular joint.
>
> . . .
>
> Evaluation of the sinus tarsi demonstrates large amount of edema with poor visualization of the sinus tarsi contents.  In addition, specifically, there is poor visualization of the cervical and interosseous ligaments.  These findings are consistent with sinus tarsi syndrome.

(AR 216 - 17.)

In October 2008, Plaintiff's lumbar spine was evaluated at the Spine & Orthopaedic Medical Center. The examination indicated no edema and no swelling in Plaintiff's extremities. (AR 222-24.) Plaintiff was found to have a "left foot birth defect," her gait was described as "slow but steady," and no tenderness was noted. She had normal stability, muscle strength, and tone in her left extremity. (AR 222-24.)

**B. Administrative Proceedings**

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 45-48, 58, 76.) On July 9, 2008, ALJ Patricia L. Flierl held a hearing where Plaintiff testified that she experiences sharp pain in her left ankle, "every day, all the time." (AR 25.) The pain is better if she elevates her leg on a pillow. (AR 25.) Cortisone shots relieved some of the ankle pain, but only for about a week after which time the pain would return. (AR 27.) According to Plaintiff, she keeps her leg elevated for about seven hours per day. (AR 29.) She was prescribed orthotics, but they do not help. She can walk for about five minutes and she can stand for approximately 10 minutes. (AR 30-31.) Due to back pain, Plaintiff can only sit for approximately an hour. Plaintiff estimated that the heaviest item she could lift would be a gallon of milk. (AR 33.) Dr. Kruger told Plaintiff that surgery on her foot was not recommended as it would provide only temporary relief.

A vocational expert ("VE") testified at the hearing and explained that, given Plaintiff's current limitations, she could not perform her past relevant work. (AR 42.) However, a person of Plaintiff's age with the same education and work history and who was limited to sedentary work but could not carry, stand, or walk as part of any job duties and could never push, pull, climb, balance, kneel, crouch, crawl, or stoop could work as an ampoule sealer, a loader, or a weight tester. (AR 42-43.) Conversely, there are no jobs in the national economy for a hypothetical person with Plaintiff's limitations who needs to elevate her feet during the day. (AR 43.)

On September 11, 2008, the ALJ issued a decision, finding Plaintiff not disabled since June 9, 2006. (AR 9-16.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of June 9, 2006; (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Code of Federal

1  Regulations; (3) does not have an impairment or combination of impairments that meets or equals
2  one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) could not perform
3  her past relevant work as a security guard and teacher's aide; but (5) could perform other work that
4  exists in significant numbers in the national economy. (AR 13-14.) Plaintiff sought review of this
5  decision before the Appeals Council. On December 11, 2009, the Appeals Council denied review.
6  (AR 1-3.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R.
7  § 404.981. On February 8, 2010, Plaintiff filed a complaint before this Court seeking review of the
8  ALJ's decision.

## SCOPE OF REVIEW

10  The ALJ's decision denying benefits "will be disturbed only if that decision is not supported
11  by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.
12  1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that
13  of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must
14  determine whether the Commissioner applied the proper legal standards and whether substantial
15  evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d
16  909, 911 (9th Cir. 2007).

17  "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v.*
18  *Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such
19  relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
20  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*,
21  305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both
22  the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and
23  may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v.*
24  *Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

26  An individual is considered disabled for purposes of disability benefits if he is unable to
27  engage in any substantial, gainful activity by reason of any medically determinable physical or
28  mental impairment that can be expected to result in death or that has lasted, or can be expected to

last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. *Id.* §§ 404.1520(f), 416.920(f). If not, in the Fifth Step, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

**A.    ALJ's RFC Assessment**

Plaintiff asserts that the ALJ's assessment of her RFC impermissibly failed to account for her edema and the fact that she needs to elevate her leg as a result of the edema. (Plaintiff's Brief ("Br.") at 10-11.) The Commissioner contends that, while there is a finding of edema in the medical record, none of the medical records indicate that Plaintiff was instructed to keep her legs elevated

as treatment. (Comm'r's Br. at 8.) Moreover, Plaintiff's assertion that she must keep her legs elevated is only her lay testimony regarding her symptomatology, which has been rejected by the ALJ and was not challenged on appeal.

October 8, 2008, MRI findings related to Plaintiff's ankle indicate "edema in the sustentaculum tali." (AR 216.) The radiological report states that, "[g]iven these findings of a talar beak and prominent plantar aspect of the navicular bone with edema, there is likely a fibrous coalition at the calcaneal navicular joint." (AR 216.) The fact that the MRI revealed internal edema in the sustentaculum tali does not indicate that Plaintiff is required to elevate her leg all day as treatment for the condition. There are no medical records or doctors' reports that recommend that Plaintiff treat the edema noted in the MRI by elevating her leg in such a manner. Further, Plaintiff's statement that she must elevate her leg to treat her symptoms is a medical opinion she is not competent to render. To the extent that Plaintiff is reporting her observable symptoms and what she does to manager her pain – testimony she is competent to provide – the ALJ rejected Plaintiff's testimony regarding the extent of her limitations, and this credibility finding was not challenged by Plaintiff. There is no basis to conclude that Plaintiff is medically required to keep her leg elevated all day as treatment for her ankle condition, nor was Plaintiff's lay testimony credited in this regard. Therefore, the ALJ did not err by failing to include in Plaintiff's RFC that she must elevate her leg most of the day.

**B.     Application of Social Security Ruling 96-9p**

Plaintiff asserts that the ALJ's RFC, which limits Plaintiff to jobs involving no standing, walking, or stooping, precludes sedentary work under Social Security Ruling ("SSR") 96-9p such that Plaintiff should have been found disabled at the Fifth Step. (Plaintiff's Br. at 7-8.)

The Social Security Administration may meet its burden at the Fifth Step of the sequential evaluation in two ways: (1) through testimony of a vocational expert, and (2) by reference to the Medical-Vocational Guidelines (the "grids"). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). "The [Social Security Administration's] need for efficiency justifies use of the grids at step five where they *completely and accurately* represent a claimant's limitations. In other words, a claimant must be able to perform the *full range* of jobs in a given category, i.e., sedentary work, light

work, or medium work." *Tackett* F.3d at 1101 (internal citation omitted and second emphasis added). "If the grids fail accurately to describe a claimant's particular limitations, [the ALJ] may not rely on the grids alone to show the availability of jobs for the claimant." *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985). Rather, the ALJ may meet his burden under the Fifth Step by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995). Specifically, where the grids are inapplicable because the plaintiff's particular limitations do not precisely match the grid criteria, the ALJ is required to obtain vocational expert testimony. *See Burkhart v. Bowen,* 856 F.2d 1335, 1341 (9th Cir. 1988).

Where a claimant's RFC assessment is for less than a full range of sedentary work, this "reflects very serious limitations resulting from an individual's medical impairment(s)." SSR 96-9p, 1996 WL 374185, *1 (July 2, 1996).[2] SSR 96-9p provides guidance to the ALJ in how to assess whether the sedentary occupational base has been eroded based on particular limitations. For example, where a claimant is limited in her ability to stand or walk, as is Plaintiff, SSR 96-9p provides the following:

> The full range of sedentary work requires that an individual be able to stand and walk for a total of approximately 2 hours in an 8-hour workday. If an individual can stand and walk for a total of slightly less than 2 hours per 8-hour workday, this, by itself, would not cause the occupational base to be significantly eroded. Conversely, a limitation to standing and walking for a total of only a few minutes during the workday would erode the unskilled sedentary occupational base significantly. For individuals able to stand and walk in between the slightly less than 2 hours and only a few minutes, it may be appropriate to consult a vocational resource.

*Id.* at *6. Further, with regard to a postural limitation for stooping, SSR 96-9p offers the following guidance:

> An ability to stoop occasionally; i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations. A *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary

---

[2] SSRs are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding precedent upon ALJs. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984); *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 692 n.2 (9th Cir. 1999).

8

> work. Consultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping.

*Id.* at *8.

Here, the ALJ determined that Plaintiff had the RFC to perform sedentary work that involved no carrying, standing, or walking as part of her job duties; and she was never to climb, balance, crouch, crawl, or stoop. (AR 12.) Given Plaintiff's RFC, the ALJ stated that her ability to perform sedentary work "has been impeded by additional limitations." (AR 15.) The ALJ explained that, "[t]o determine the extent to which these limitations erode the unskilled sedentary occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." (AR 15.)

Based on SSR 96-9p, the ALJ appropriately determined that Plaintiff's ability to perform a full range of sedentary work was compromised – particularly because she could not do *any* stooping, and she was not to stand or walk as part of her job duties. As a result, the ALJ correctly elicited testimony from a VE to determine whether, despite the erosion of a full range of sedentary work, there were still significant numbers of jobs in the national economy that Plaintiff could perform. Plaintiff's argument that her inability to perform a wide range of sedentary work necessitates a finding of disabled is incorrect. The fact that Plaintiff has limitations that have significantly eroded the sedentary work base is precisely why the testimony of a VE is necessary in this case – without the testimony of the VE the ALJ could not have met her burden of showing that there was still work in the national economy that Plaintiff can perform. *Roberts,* 66 F.3d at 184 (9th Cir. 1995). While a complete inability to stoop does erode the unskilled work base significantly, SSR 96-9p leaves open the possibility that an individual with such a limitation *may* still be determined able to perform certain work as testified to by a vocational expert. As Plaintiff is not to perform work that involves any stooping, the ALJ appropriately sought testimony from a VE about what jobs, if any, she could still perform, and therefore did not fail to comply with SSR 96-9p.

**C.    Compliance with Social Security Ruling 00-4p**

Plaintiff contends that the ALJ did not comply with SSR 00-4p in soliciting testimony from the VE during the hearing. Specifically, Plaintiff asserts that the VE's testimony regarding the jobs

that Plaintiff could perform given her limitations was not consistent with the Dictionary of Occupational Titles ("DOT"). Plaintiff avers that the VE did not explain how the jobs he identified did *not* involve any walking or standing.

The Social Security Administration relies "primarily on the DOT . . . . Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT." SSR 00-4p, 2000 WL 1898704, at *2. "Neither the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict." *Id.* "When a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT." *Id.* at *4. In such situations, the adjudicator "will [a]sk the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT." *Id.* "If the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict." *Id.* In view of the requirements of SSR 00-4p, an ALJ may not rely on a VE's testimony about the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT and whether there is a reasonable explanation for any deviation. *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007). The failure to do so may be harmless where there is no conflict or where the VE provides sufficient support to justify any deviations. *See id.* at 1154 n.19.

Plaintiff asserts that the VE's testimony was not consistent with the DOT because "each particular alternate occupations [sic] contained in the DOT include the following: Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met." (Plaintiff's Reply Br. at 2:10-14.) Plaintiff's description of sedentary work is not a definition for any of the jobs identified by the VE. Rather, it is the definition that the DOT provides for sedentary work generally. *See* DOT, Appendix C. The DOT's general definition of sedentary work does not mean that all sedentary work necessarily requires some walking and standing. Further, there is nothing in the DOT descriptions of the particular jobs identified by the VE that indicate that standing or walking is required – nor does Plaintiff identify any portion of the particular

job description in the DOT as requiring such.  Thus, there is no inconsistency between the DOT description of the jobs and the VE's testimony describing these jobs as the type that Plaintiff could perform given her limitations.

The ALJ specifically posed a hypothetical to the VE that encapsulated Plaintiff's limitations – particularly with regard to standing, walking, and stooping:

> By way of hypo, let's assume an individual same age as claimant, same educational background, same work history.  This individual's limited to sedentary work, can do no carrying, no standing or walking as part of the job duty, never push, pull, climb, balance, kneel [crouch], crawl, or stoop. Okay, so basically sedentary, sitting all day. But no carrying . . . No carrying, no carrying but lifting, if it's sitting down, it's okay.

(AR 42.)  The VE then opined that, given all these limitations, Plaintiff would be able to perform work as an ampoule sealer, a loader of semi-conductor dies, and a weight tester. (AR 43.) Further, the ALJ expressly inquired of the VE whether his testimony was consistent with the DOT (AR 43), and the VE stated it was.

In sum, there is no identifiable inconsistency between the testimony offered by the VE and the DOT such that the ALJ could be held to have incorrectly applied SSR 00-4p.

## CONCLUSION

After consideration of the Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff ROSIE SYLVIA HERNANDEZ.

IT IS SO ORDERED.

**Dated:   June 21, 2011**                    /s/ Sheila K. Oberto
                                       UNITED STATES MAGISTRATE JUDGE